UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPIRE TRUST, LLC, et al.,<br><br>        Plaintiffs,<br><br>  v.<br><br>JOSEPH R. CELLURA, EMELIA BAER CELLURA, MALIBU 55 INC. AND DOES 1–3,<br><br>        Defendants. | No. 24-CV-859 (KMK)<br><br>ORDER |

KENNETH M. KARAS, United States District Judge:

  Empire Trust LLC, ADMI Inc. ("ADMI"), Michael Ghiselli ("Ghiselli"), Bruce Houle ("Houle"), and Baynon International Corp. a/k/a Global Brands Capital Corp. ("GBCC"; collectively "Plaintiffs") bring this Action against Joseph Cellura ("Cellura"), Emilia Cellura, Malibu 55 Inc., and three John Does (collectively "Defendants") alleging various claims arising out of Defendants' allegedly fraudulent conduct. (*See generally* Am. Compl. (Dkt. No. 10).) Before the Court is Plaintiffs ex parte Motion for a temporary restraining order ("TRO"). (*See* Pls' Ex-Parte Emergency Mot. ("Mot.") (Dkt. No. 12).) For the foregoing reasons, Plaintiffs' Motion is denied.

## I. Background

### A. Factual Background

  The Amended Complaint contains numerous allegations of fraud arising out of a complicated series of business transactions. (*See generally* Am. Compl.) At its core, and as relevant to the instant Motion, Plaintiffs allege that Cellura embezzled $17 million owed to Plaintiffs under a voting trust agreement governing the Parties' shares in GBCC. (*See* Am.

Compl. ¶¶ 7, 43–45.) Starting in January 2023, they allege that Cellura—who acted as trustee under the agreement and as CEO of GBCC—engaged in a series of unauthorized transactions where he transferred company funds to shell companies that he owned instead of disbursing them to Plaintiffs. (*See, e.g.*, *id*. ¶ 65 (alleging unauthorized transfer of $7 million from ADMI to Malibu 55); *id*. ¶¶ 81–84 (alleging that Cellura obtained a $6 million loan for ADMI but had the funds deposited directly to Malibu 55); *see also id*. ¶ 27 (alleging Cellura is the President and Director of Malibu 55).)[1] Plaintiffs also claim that Cellura implemented a "Ponzi scheme" by soliciting investors through fraudulent convertible notes. (*See* Am. Compl. ¶¶ 59–61, 128.)

Plaintiffs discovered at least some of these transactions in June 2023. (*See id*. ¶ 85.) And since then, they have made multiple demands for Cellura to return the allegedly embezzled funds. For instance, at a meeting on "July 2-3, 2023," Plaintiffs' revoked Cellura's authority as trustee and served him with a cease and desist letter demanding that he stop engaging in certain unauthorized transactions with third parties. (*See id*. ¶ 88.) Plaintiffs allege that they made additional attempts to resolve the instant claims on October 24, 2023, November 11, 2023, December 4, 2023, and January 3, 2024, apparently to no avail. (*See id*. ¶ 95.)[2]

The Amended Complaint also contains allegations related to the timing of the instant Motion. Most concretely, ADMI plans to close on a real estate deal on March 28, 2024, for $3.5 million. (*Id*. ¶ 110.) That deadline appears to relate to a purchase option that ADMI acquired in June 2023, and Plaintiffs allege that "[t]here are no more extensions available." (*Id*. ¶ 111.)

---

[1] It appears from the Amended Complaint that GBCC is the parent entity and that ADMI Inc. and SIR Inc. are subsidiary holding companies for certain real estate assets. (*See* Am. Compl. ¶¶ 25, 61.) That said, the exact relationship between these entities is not entirely clear.

[2] The Amended Complaint appears to contain a typographical error. "October 24, 2024" is months away, so the Court assumes Plaintiff means "October 24, 2023." (*See* Am. Compl. ¶ 95.)

Although Plaintiffs do not make allegations about ADMI's ability to close, they claim that ADMI has been unable to pay "engineering and architectural firms" for work on the deal because Defendants "have unlawfully taken the funds." (*Id*.) Additionally, Cellura allegedly "told [Ghiselli] that [Cellura] would 'kill any attempt to make a deal' if he is not in charge and paid 70% of the sale price." (*Id*. ¶ 113.) Apart from the transaction, ADMI also has a $1 million obligation due in April 2024 that it allegedly assumed based on Cellura's actions as CEO. (*Id*. ¶ 109.) Plaintiffs are concerned that the inability to meet these obligations, combined with the alleged fraudulent conduct, will harm their business reputation. (*See id*. ¶ 112.)

B.  Procedural History

Plaintiffs commenced the instant Action on February 6, 2024. (Compl. (Dkt. No. 6).) They requested summonses, (Dkt. No. 8), which the Court issued on February 29, 2024, (Dkt. No. 9), although it appears they have not served Defendants, (*see generally* Dkt. (no proof of service appears as required by Fed. R. Civ. P. 4(*l*)(1).) On March 19, 2024, Plaintiffs filed the Amended Complaint along with the instant Motion. (*See* Mot.; Decl. in Supp. of Ex Parte Mot. ("Dollinger Decl.") (Dkt. No. 12-4); Pls' Mem. of Law in Supp. of Mot. ("Pls' Mem.") (Dkt. No. 12-5)); Order to Show Cause ("Proposed TRO") (Dkt. No. 12-6).)

The Court held a telephone conference with counsel for Plaintiffs on March 19, 2024, to address certain differences between the original Complaint and the Amended Complaint. (*See* Dkt. (minute entry for March 19, 2024).) Counsel for Plaintiffs submitted a supplemental declaration regarding those issues on March 20, 2024. (*See* Supp'l Decl. in Supp. of Mot. ("Supp. Ghiselli Decl.") (Dkt. No. 13).)[3]

---

[3] The contents of this supplemental declaration have no bearing on the disposition of the pending application, but will be addressed later, as they raise troubling questions about the differences between the original Complaint and the Amended Complaint, as well as some of the representations of Plaintiffs' counsel during the March 19 conference.

3

II.  Discussion

A.  Standard of Review

Temporary restraining orders ("TROs") are governed by the familiar standard for preliminary injunctions.  *See Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (noting that "[t]he standard for an entry of a TRO is essentially the same as for a preliminary injunction," except that TROs are often granted ex parte prior to extensive discovery); *accord Rosa v. Pathstone Corp.*, No. 23-CV-1071, 2023 WL 6813100, at *2 (S.D.N.Y. Oct. 13, 2023).  "A party seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction."  *Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (alteration adopted) (quotation marks omitted).

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (emphasis and quotation marks omitted)); *Free Country Ltd.*, 235 F. Supp. 3d at 565 ("[A] TRO, perhaps even more so than a preliminary injunction, is an extraordinary and drastic remedy . . . ." (quotation marks omitted)).  "The purpose of a preliminary injunction is not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur."  *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (quotation

4

marks omitted). "These standards apply with equal force where defendants have not appeared and the motion for a preliminary injunction is unopposed." *Roku Inc. v. Individuals, Corps., Ltd. Liab. Corps., P'Ships, & Unincorporated Ass'ns*, No. 22-CV-850, 2022 WL 1598208, at *2 (S.D.N.Y. May 20, 2022); *see also JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035, 2019 WL 3051760, at *1–2 (S.D.N.Y. July 11, 2019) (applying these standards to an unopposed preliminary injunction motion).

### B. Plaintiffs' Ex Parte Motion

Although preliminary relief may be granted ex parte, plaintiffs must meet additional requirements to proceed without notice. Federal Rule of Civil Procedure 65(b)(1) allows a court to issue ex parte orders "only if":

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

*Id.*; *accord Zapoteco v. Rapi, Inc.*, No. 20-CV-6335, 2021 WL 10717527, at *1 (E.D.N.Y. Jan. 8, 2021). Moreover, Local Rule 6.1(b) states that: "No ex parte order, or order to show cause to bring on a motion, will be granted except upon a clear and specific showing by affidavit of good and sufficient reasons why a procedure other than by notice of motion is necessary . . . ." *Id.* (italics omitted); *accord City of New York v. FedEx Ground Package Sys., Inc.*, No. 13-CV-9173, 2015 WL 783363, at *2 (S.D.N.Y. Feb. 24, 2015). "As the Supreme Court has explained, the 'stringent restrictions' placed on ex-parte temporary restraining orders, 'reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" *Zapoteco*, 2021 WL 10717527, at *1

(quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 438–39 (1974)).

For two reasons, Plaintiffs fall short of these requirements. First, they nowhere explain what injury will result "before the adverse party can be heard." *See* Fed. R. Civ. P. 65(b)(1)(A). The only time-sensitive allegations relate to an alleged $3.5 million real estate transaction scheduled to close on March 28, 2024, for which there are "no more extensions available." (*See* Am. Compl. ¶¶ 110–11; *see also* Pls' Mem. 12 (referencing same transaction).) However, Plaintiffs notably do not clearly allege that they lack the funds to close the deal or that those funds will dissipate in the next few days absent this Court's intervention. (*See generally* Am. Compl.) Although counsel for Plaintiffs states generally that "*ADMI* is without funds and cannot negotiate with a partner or purchase[] unless [Cellura] and [Baer] are restrained," (Dollinger Decl. ¶ 26 (emphasis added)), he provides no specific facts regarding other Plaintiffs, ADMI's accounts, or ADMI's ability to obtain funds, and he does not even mention the March 28 transaction in his declaration, (*see generally id*.) Even accepting that contention, Plaintiffs do not explain why the Court cannot hear from Defendants—on an expedited basis—before the closing date. (*See id*.)[4] This alleged harm is even more peculiar because the relief requested does not appear to address it. Insofar as Plaintiffs seek to use Defendants' allegedly embezzled funds to finance the deal, the proposed TRO only freezes those funds rather than forfeiting them. (*See* Proposed TRO at 3 (seeking to enjoin Defendants from

---

[4] Plaintiffs also mention an "April 2024" debt obligation. (*See* Am. Compl. ¶ 109; Pls' Mem. 12.) However, they similarly fail to explain why immediate relief is necessary without giving Defendants a chance to be heard.

6

"[t]ransferring, liquidating, [or] converting . . . Assets as claimed in the Amended Complaint").)

Moreover, the timing of Plaintiffs Motion undermines any notion that hearing from Defendants is impractical. Plaintiffs have been aware of the alleged fraudulent activity since at least June 2023. (*See* Am. Compl. ¶¶ 82–83, 85 (discussing fraudulent loan and stating that Plaintiff Ghiselli "discovered the transaction and made a demand for turnover of the T&L loan proceeds" on "June 20-26, 2023"); *id*. ¶¶ 90–92 (alleging that Defendants executed an unauthorized $4.551 million transaction "on September 14, 2023" and that "[o]n September 20, 2023, due demand for return of the [$4.551 million] . . . was made of [Defendants]"); *cf id*. ¶ 95 (alleging that "multiple attempts to resolve the claims have been attempted including on . . . November 11, 2023, December 4, 2023, and January 3, 2024[.]").) Likewise, Plaintiffs have presumably been aware of the March 28, 2024, drop-dead date for at least as long, as they acquired "a purchase option on the land" in June 2023. (*See id*. ¶ 110.) Adding to the Court's concern is the fact that Plaintiffs chose to wait for over a month to seek emergency relief after commencing this Action. (*See* Compl. (filed February 6, 2024.) Plaintiffs, it appears, have slept on their rights, and their "laches in bringing this Motion . . . belies any argument that expedited briefing and hearing of the Motion is warranted." *See ICBC Standard Sec., Inc. v. Luzuriaga*, No. 15-CV-5267, 2015 WL 5827497, at *2 (S.D.N.Y. Oct. 6, 2015).[5]

---

[5] To be clear, the Court invokes the laches analogy simply to reinforce its sense that Plaintiffs' Motion is insufficient for purposes of Rule 65. More generally, "[l]aches is an equitable defense available to a defendant who can show 'that the plaintiff has inexcusably slept on [its] rights so as to make a decree against the defendant unfair' and that the defendant 'has been prejudiced by the plaintiff's unreasonable delay in bringing the action.'" *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 190 (2d Cir. 2019) (quoting *Merrill Lynch Inv. Managers v. Optibase Ltd*., 337 F.3d 125, 132 (2d Cir. 2003)). Similarly, courts have held that the "failure

Accordingly, Plaintiffs have failed to satisfy the requirements of Rule 65(b).  *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, No. 22-CV-1585, 2022 WL 748249, at *2 (S.D.N.Y. Mar. 11, 2022) (dissolving ex parte TRO because the plaintiffs "did not explain why any irreparable injury would result before the adverse party [could] be heard" and because they "provide[d] no indication as to why [the TRO] could not have been filed earlier in order to afford the [defendant] an opportunity to be heard"); *see also Rabbi Jacob Joseph School v. Province of Mendoza*, 342 F. Supp. 2d 124, 127 (E.D.N.Y. 2004) (dissolving TRO where the plaintiff did not "declar[e,] in an affidavit or verified complaint that immediate and irreparable harm would result" before the defendant "could be heard").

Second, Plaintiffs did not comply with Local Rule 6.1(b)'s requirement to provide "good and sufficient reasons" why notice is not necessary.  *See id.*; *see also* Fed. R. Civ. P. 65(b)(1)(B) (stating that "the movant's attorney" must explain why notice "should not be required" to obtain ex parte order).  In satisfaction of Rule 6.1, Plaintiffs' counsel states that:  "It is clear unless restrained, the Defendants will proceed with [their] threats and there will be nothing left to pay the investors."  (Dollinger Decl. ¶ 26.)  Apart from noting that Defendants have "an opportunity" to "siphon or otherwise convert ADMI's remaining assets," (*see id.* ¶ 14)—an opportunity they have had for months—counsel provides absolutely no information about why this is an immediate concern.  *See Lester Altman Produce Co. Inc. v. Fruit Fresh Up, Inc.*, No. 13-CV-213, 2013 WL 888076, at

---

to act sooner undercuts the sense of urgency that ordinarily accompanies a motion of preliminary relief and suggests that there is, in fact, no irreparable injury."  *Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, No. 15-CV-9605, 2016 WL 3004516, at *1 (S.D.N.Y. Jan. 21, 2016) (quoting *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 968 (2d Cir. 1995)).  These arguments will of course be available to Defendants at later stages of this case.

8

\*2 (W.D.N.Y. Mar. 8, 2013) (holding it was error for magistrate judge to issue ex parte TRO where plaintiff "d[id] not provide details regarding the [potential] dissipation of trust assets" (quotation marks omitted)); *cf. Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 22-CV-08842, 2023 WL 8810142, at \*4 (S.D.N.Y. Dec. 19, 2023) (finding "immediate and irreparable injury [was] likely to occur absent a TRO" where "documentation show[ed] that [d]efendants . . . [were] likely dissipating assets" at the time of the plaintiff's motion). In fact, Defendants appear have been on notice of Plaintiffs' claims, and of this Action, for at least a month, which undermines any imminent risk of dissipation. As recently as February 6, 2024, and multiple times prior, Plaintiffs and Defendants have discussed a resolution of the instant claims. (*See* Am. Compl. ¶ 95 (detailing past attempts at resolution and alleging that Defendants made Ghiselli a settlement offer on February 6, 2024).) And counsel mentions a February 29, 2024, text message from Cellura "warning [Alexander Smith, a non-Party investor] against participating or assisting [Ghiselli] in his action against [Cellura] and his wife [Emilia Cellura]." (Dollinger Decl. ¶ 19 (citing Decl. in Supp. of Ex Parte Mot. ("Smith Decl.") ¶ 9 (Dkt. No. 12-3)).) While that communication is concerning and will be addressed in due course, it establishes that Defendants know about this proceeding, which removes any need to keep it secret. Plaintiffs have therefore failed to provide "sufficient reasons" to proceed ex parte. *See Chevron Corp. v. Donziger*, 37 F. Supp. 3d 650, 652 & n,1 (S.D.N.Y. 2014) (denying emergency stay on Rule 6.1(b) grounds because the plaintiff failed to show irreparable injury "in the period between the making of the motion and its disposition on a schedule consistent with the rules" and because their claims of imminent injury appeared to be "spun entirely out of whole cloth" (emphasis

9

omitted)); *see also Propetrol Ltd. v. QMF Energy DMCC*, No. 24-CV-330, 2024 WL 691059, at *1 (S.D.N.Y. Feb. 20, 2024) (denying TRO without prejudice for failure to comply with Local Rule 6.1(b)); *Mister Softee, Inc. v. Valdez*, No. 01-CV-12742, 2002 WL 24473, at *1 (S.D.N.Y. Jan. 8, 2002) (declining to issue ex parte order to show cause where the plaintiff made no showing under Local Rule 6.1(b)).

Accordingly, Plaintiffs may bring their motion "by properly serving and filing a notice of motion in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court."  *See Propetrol Ltd.*, 2024 WL 691059, at *1.

### III.  Conclusion

For the aforementioned reasons, Plaintiffs' Motion is denied without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion.  (Dkt. No. 12.)

SO ORDERED.

Dated:    March 21, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge