UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMPIRE TRUST, LLC, *et al*.,<br><br>                        Plaintiffs,<br><br>    v.<br><br>JOSEPH R. CELLURA, EMELIA BAER CELLURA, MALIBU 55 INC., *and* DOES 1–3,<br><br>                        Defendants. | No. 24-CV-859 (KMK)<br><br>OPINION & ORDER |

Appearances:

Douglas Richard Dollinger, Esq.
Douglas R. Dollinger, P.C. and Associates
Middletown, NY
*Counsel for Empire Trust LLC and Bruce Houle*

Barak Lurie, Esq.
Lurie & Kramer
Los Angeles, CA
*Counsel for Michael F. Ghiselli and Bruce Houle*

Lawrence Richard Lonergan, Esq.
Annie Erin Causey, Esq.
James Francis Woods, Esq.
Woods Lonergan PLLC
New York, NY
*Counsel for ADMI Inc., SIR Inc., Baynon International Corp., and Michael F. Ghiselli*

Richard M. Scherer, Jr., Esq.
Tessa Rae Scott, Esq.
Lippes Mathias LLP
Buffalo, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Empire Trust LLC ("Empire Trust"), ADMI Inc. ("ADMI"), Michael Ghiselli ("Ghiselli"), Bruce Houle ("Houle"), and Baynon International Corp. a/k/a Global Brands Capital Corp. ("GBCC"; collectively "Plaintiffs") bring this Action against Joseph Cellura ("Cellura"), Emilia Cellura, Malibu 55 Inc. ("Malibu 55"), and three John Does (collectively "Defendants") alleging various claims arising out of Defendants' allegedly fraudulent conduct. (*See generally* Am. Compl. (Dkt. No. 17).) Before the Court is Defendants' Motion to Disqualify counsel for Empire Trust, LLC, and Bruce Houle, Douglas Dollinger. (Not. of Mot. (Dkt. No. 32).) For the following reasons, Defendants' Motion is granted.

## I. Background

### A. Factual Background

As the Court explained in ruling on Plaintiffs' request for a temporary restraining order, this case involves numerous allegations of fraud arising out of a complicated series of business transactions. (*See generally* Am. Compl.) At core, Plaintiffs allege that Cellura embezzled $17 million owed to Plaintiffs under a voting trust agreement governing the Parties' shares in GBCC. (*See* Am. Compl. ¶¶ 7, 43–45.) Starting in January 2023, Plaintiffs allege that Cellura—who acted as trustee under the agreement and as CEO of GBCC—engaged in a series of unauthorized transactions where he transferred company funds to shell companies that he owned instead of disbursing them to Plaintiffs. (*See, e.g., id.* ¶ 65 (alleging unauthorized transfer of $7 million from ADMI to Malibu 55); *id.* ¶¶ 81–84 (alleging that Cellura obtained a $6 million loan for ADMI but had the funds deposited directly to Malibu 55); *see also id.* ¶ 27 (alleging Cellura is the President and Director of Malibu 55).) Plaintiffs also claim that Cellura implemented a "Ponzi scheme" by soliciting investors through fraudulent convertible notes. (*See id.* ¶¶ 59–61, 128.) As relevant here, some of the embezzled funds are alleged to be the proceeds of a

licensing agreement involving the use of the "Sports Illustrated" brand name in connection with an Alabama resort property. (*See, e.g.*, *id.* ¶ 39.)

B. Procedural History

On April 1, 2024, Defendants sought leave to file a motion to disqualify Dollinger based on an alleged concurrent conflict. (Dkt. No. 20.) Dollinger responded, (Dkt. No. 23), the Court held a pre-motion conference, (see Dkt. (minute entry for April 9, 2024), and set a briefing schedule, (Order (Dkt. No. 25)). After an extension, (Dkt. No. 29), Defendants moved to disqualify on June 10, 2024. (Not. of Mot. (Dkt. No. 32); Mem. of Law in Supp. ("Defs' Mem.") (Dkt. No. 33); Decl. of Joseph Cellura in Supp. ("Cellura Decl.") (Dkt. No. 34).) Dollinger responded on June 25, 2024, (Resp. in Opp. to Mot. ("Empire Trust Mem.") (Dkt. No. 36-8)), and Defendants replied on July 2, 2024, (Reply Mem. of Law ("Defs' Reply") (Dkt. No. 38)).

On July 3, 2024, Dollinger filed a proposed stipulation and order substituting him out as counsel for several of the Plaintiffs and Plaintiff entities. (*See* Dkt. No. 39.) Believing Dollinger to no longer be a part of this Action, the Court denied the Motion as moot on July 18, 2024. (*See* Order (Dkt. No. 45.) However, it became clear, both via letters to the Court, (Dkt. No. 46), and via representations at a subsequent conference, that Dollinger was still representing Empire Trust, LLC, (*see* Letter from Douglas R. Dollinger, Esq., to Court (July 29, 2024) ("Letter Resp. in Opp. to Mot.") (Dkt. No. 48) at 2 (stating that "the filed substitutions . . . did not include Empire").) In addition, Dollinger is still listed on the docket as counsel of record for Houle. (*See* Dkt.) Although another attorney has been admitted pro hac vice to represent Houle, there has been no formal withdrawal or substitution. (*See* Order of Admission (Dkt. No. 41).) The Court accordingly invited Defendants to formally move to set aside its July 18, 2024, Order

3

pursuant to Rule 60, and to renew their Motion to Disqualify. (*See* Letter Mot. (Dkt. No. 56).) Defendants did so, (*see id*.), and that request is now granted.

On August 9, 2024, Dollinger filed a notice seeking voluntary dismissal of Empire Trust's claims pursuant to Federal Rule of Civil Procedure 41(a)(1)(A). (*See* Not. of Voluntary Discontinuance (Dkt. No. 58).) Defendants objected arguing (1) that a subset of plaintiffs in a multi-plaintiff action cannot dismiss their claims without court approval, and (2) that the notice was an improper attempt to avoid a formal ruling on the Motion to Disqualify. (*See generally* Defs' Obj. to Pl's Not. ("Defs' Obj.") (Dkt. No. 60).) Dollinger responded on August 19, 2024. (Empire's Resp. to Defs' Obj. ("Empire Obj. Resp.") (Dkt. No. 67).)

## II. Discussion

### A. Standard of Review

"The authority to disqualify an attorney stems from federal courts' inherent power to preserve the integrity of the adversary process." *Streichert v. Town of Chester*, No. 19-CV-7133, 2021 WL 735475, at *4 (S.D.N.Y. Feb. 25, 2021) (internal quotation marks omitted) (quoting *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)). When presented with a disqualification motion, courts in the Second Circuit have been instructed to take a "restrained approach that focuses primarily on preserving the integrity of the trial process." *Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270, 276 (S.D.N.Y. 2004) (citation and quotation marks omitted). The Court's role, therefore, is not to police each and every violation of professional rules, but rather to ensure that the proceeding before it is free from taint. *See Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 366 F. Supp. 3d 567, 571 (S.D.N.Y. 2019) (noting that, "[i]n this Circuit, disqualification is called for only where an attorney's conduct tends to taint the underlying trial, because federal and state disciplinary mechanisms suffice for other ethical violations" (citation and quotation marks

4

omitted)); *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1463 n.31 (S.D.N.Y. 1985) ("Courts are not policemen of the legal profession; that is a matter for the disciplinary arm of the bar.  Disqualification is granted to protect the integrity of the proceedings, not to monitor the ethics of attorneys' conduct.").  Moreover, in deciding a such a motion, the Court must strive "to balance 'a client's right freely to choose his counsel' against 'the need to maintain the highest standards of the profession.'" *Hempstead Video*, 409 F.3d at 132 (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)).

Because disqualification motions can often be strategically motivated, create delay and additional expense, and interrupt attorney-client relationships, the movant must satisfy a high standard of proof to disqualify the non-movant's counsel.  *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (noting the "high standard of proof" for disqualification motions, in part due to the fact they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay" (citation and quotation marks omitted)); *Gov't of India*, 569 F.2d at 739 (requiring "high standard of proof" for disqualification motions because a client loses time, money, and the benefit of its longtime counsel's specialized knowledge of its operations when its attorney is disqualified); *Capponi v. Murphy*, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) (observing that "motions to disqualify opposing counsel are disfavored in this Circuit" because they are often made for tactical purposes, cause unnecessary delay, and "impinge[] on a party's right to select counsel of its choosing.").  "Mere speculation will not suffice" to meet this high standard, *Streichert*, 2021 WL 735475, at *5 (quoting *Twin Labs., Inc. v. Weider Health & Fitness*, No. 89-CV-949, 1989 WL 49368, at *4 (S.D.N.Y. May 4, 1989)), just as the "[m]ere appearance of impropriety will not alone serve as a sufficient basis for granting a disqualification motion," *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687

F. Supp. 2d 381, 388 (S.D.N.Y. 2010) (alteration adopted) (citation omitted); *see also Jose Luis Pelaez*, 366 F. Supp. 3d at 571–72 ("When there is no claim that the trial will be tainted, appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." (alteration and citation omitted)).  Finally, resolving a disqualification motion is a "fact-intensive endeavor," *Miness v. Ahuja*, 762 F. Supp. 2d 465, 478 (E.D.N.Y. 2010), that requires "painstaking analysis of the facts and precise application of precedent," *Jose Luis Pelaez*, 366 F. Supp. 3d at 572 (quoting, inter alia, *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 (2d Cir. 1977)).

"In [the Second C]ircuit, concurrent representation conflicts"—"when an attorney simultaneously represents one client in a matter adverse to another client"—are "prima facie improper." *Gartner, Inc. v. HCC Specialty Underwriters, Inc.*, 580 F. Supp. 3d 31, 36 (S.D.N.Y. 2022) (quoting *Hempstead Video, Inc.*, 409 F.3d at 133); *see also IBM Corp. v. Micro Focus (US), Inc.*, 676 F. Supp. 3d 263, 278 n.8 (S.D.N.Y. 2023) (same).  Where such a conflict exists, the burden shifts to the attorney opposing disqualification "to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *Victorinox AG v. The B & F Sys., Inc.*, 200 F. Supp. 3d 423, 426 (S.D.N.Y. 2016) (emphasis in original) (quoting *Hempstead Video, Inc.*, 409 F.3d at 133), *aff'd sub nom. Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44 (2d Cir. 2017), *as amended* (Oct. 4, 2017).  The Second Circuit has described this burden as "so heavy that it will rarely be met." *GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981)).  Specifically, "it will not suffice to show that the two matters upon which an attorney represents existing clients are unrelated." *Id*. at 210.  Instead, courts denying motions to disqualify based on concurrent conflicts do so in exceptional

circumstances, like where evidence demonstrates that there "is *no risk*" that "confidential information w[ould] be used to the disadvantage" of a client. *See Brown & Williamson Tobacco Corp. v. Pataki*, 152 F. Supp. 2d 276, 289 (S.D.N.Y. 2001) (emphasis added); *see also Victorinox*, 200 F. Supp. 3d at 427 (denying a motion to disqualify based on credible testimony that "there was no exchange of pertinent information" and where there was "no indication" that the conflicted legal team "even knew about the conflict").

    B.  Analysis

        1.  Concurrent Conflict

Defendants move to disqualify Dollinger on the basis of a concurrent conflict of interest. (*See* Defs' Mem. 6–7.) Unlike other cases based on concurrent conflicts that arose in the past, this one exists right now. Dollinger represents Joseph R. Cellura as a Plaintiff in *Tarsin Mobile Inc., et al. v. Moyer et al.* (the "Moyer Action"), No. 22-CV-9339—an action currently pending before Judge Andrew Carter in this District. At the same time, he serves as counsel for Empire Trust, LLC, a plaintiff suing Cellura in this case. (*See generally* Dkt.)[1]

---

[1] Six days after Dollinger filed the TRO application in this Action, he filed a letter of intent to withdraw his representation in the Moyer Action. (*See* Dkt. 22-CV-9339, No. 66) Judge Carter responded via Order granting Dollinger leave to file a motion to withdraw in the event he did not receive consent from Cellura's personal attorney. (*See* Dkt. 22-CV-9339, No. 68.) To date, Dollinger has not filed such a motion and has continued to participate in Moyer Action, filing papers as recently as August 29, 2024. (*See, e.g.*, Dkt. 22-CV-9339, Nos. 69–73, 77, 79, 81.)
    Regardless, in assessing whether "concurrent representation merits disqualification, courts look to the point in time at which the conflict arose" even if the representation has since ended. *See Troika Media Grp., Inc. v. Stephenson*, No. 19-CV-145, 2019 WL 5587009, at *5 (S.D.N.Y. Oct. 30, 2019); *see also Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 25 (N.D.N.Y. 2002) (explaining that, "if the rule was otherwise, an 'attorney could always convert a present client into a former client by choosing when to cease to represent the disfavored client'" (internal quotation marks omitted) (quoting *Unified Sewerage Agency of Washington Co., Ore. v. Jelco*, 646 F.2d 1339, 1345 n.4 (9th Cir.1981)).

Dollinger does not dispute that this conflict exists. (*See generally* Empire Trust Mem.) Nor does Dollinger dispute that he knew of the conflict when this Action was filed. (*See id*.) And Dollinger does not present evidence that Cellura consented to his representation in this case at any time since. Indeed, Cellura states in a sworn declaration attached to Defendants' Motion that he has not "ever provided Dollinger with a waiver of any conflict or of [the] attorney client privilege." (*See* Cellura Decl. in Supp. of Mot. ("Cellura Decl.") ¶ 20 (Dkt. No. 34).) Mr. Cellura also shares that he has "grave concerns that privileged information previously shared with Dollinger will be used for strategic benefit in the present action." (*Id*. ¶ 18.) As explained by Defendants' Memorandum, both this Action and the Moyer Action involve allegations related to a "Sport Illustrated" licensing agreement negotiated by Cellura and related transactions. (*See* Am. Compl. ¶¶ 6, 151–53 (claiming that Cellura "falsely claimed the SI-Lics. [Sports Illustrated Licenses]" to fraudulently induce investments); First Amended Complaint ("Moyer Compl.") ¶¶ 61–62 (Dkt. 22-CV-9339, No. 48) (discussing Cellura's negotiations regarding "use of the tradename 'Sports Illustrated'").) Judging by the complaints alone—both of which Dollinger authored—Dollinger has intimate knowledge of the circumstances of the agreement, these negotiations, and Cellura's role in them. The idea that Dollinger would turn around and sue Cellura for fraud in connection with the same agreement presents obvious risks too numerous to count. To put things "as mildly as [possible]," Dollinger appears to be engaged in "questionable conduct." *See Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir. 1976).

Given the concurrent conflict, Dollinger faces the appropriately heavy burden of proving that there is no "actual or *apparent* conflict in loyalties or diminution in the vigor of his representation." *See Hempstead Video Inc.*, 409 F.3d at 133 (emphasis in original) (citation omitted). Courts have found that burden satisfied:

8

> where the attorney shows, among other things that its client in the current matter has no doubts about the strength of its representation; that no confidential information from the previous representation will be relevant; that there is sufficient assurance that any confidential information of the complaining client will not be used against it; and, where a law firm as opposed to an individual attorney is at issue, that the current case involves different subject matters, attorneys, legal offices, and legal entities (for example, a parent and subsidiary) from those previously undertaken by the firm on behalf of the movant.

*Gartner, Inc.*, 580 F. Supp. 3d at 39 (citing *HLP Props., LLC v. Consol. Edison Co. of New York*, No. 14-CV-01383, 2014 WL 5285926, at *5 (S.D.N.Y. Oct. 16, 2014) (relying on similar factors)).

Dollinger, however, offers nothing more than scattershot distractions.

First, he implies that the Moyer Action is irrelevant because it is "dependent on a united defense." (Empire Trust Mem. 7.) Dollinger does not state what that defense is or why it does not relate to this case. But, as Defendants point out, the Action is not united in any sense relevant here because Dollinger represents Cellura in his individual capacity in the Moyer Action and brings claims solely on his behalf, among others. (*See* Moyer Compl. ¶¶ 154–59 (alleging breach of contract claim where Moyer is "liable to Cellura"); *id.* ¶¶ 164–74 (alleging defamation claim "concerning Plaintiff Cellura"); *id.* ¶¶ 175–80 (alleging intentional infliction of emotional distress claim as to Cellura).) The fact that the Moyer Action otherwise involves other parties who may share claims or defenses thus does nothing to purge the taint of Dollinger's concurrent conflict.

Second, Dollinger claims that Cellura waived the attorney client privilege as to certain "communications" in the Moyer Action. (*See* Empire Trust Mem. 7–8.) The argument seems to be that Cellura's allegations of "defamatory statements" made by Moyer are not privileged because they are a matter of public record. (*See id.* at 9.) Be that as it may, the Court cannot understand what that has to do with *other* information Cellura may have disclosed to Dollinger in

9

confidence—specifically information regarding Cellura's dealings regarding the Sports Illustrated license or ADMI, a corporate entity involved in both actions. (*See* Cellura Decl. ¶ 3.)

Third, Dollinger alternatively argues that it is *Cellura's* burden to demonstrate that the adverse information Dollinger might use in this Action is privileged. (*See* Empire Trust Mem. 8–9.) But this position is backwards. Second Circuit caselaw is clear that where a concurrent conflict is present, it is the conflicted attorney's burden to provide "assurance that any confidential information of the complaining client will not be used against it." *Gartner, Inc.*, 580 F. Supp. 3d at 39; *see also GSI Com. Sols., Inc.*, 618 F.3d at 214 (explaining that the conflicted attorney or firm must "adduce . . . evidence showing that [their] representation will not result in an 'actual or apparent conflict in loyalties.'" (citation omitted)). Dollinger offers no such assurances here, and certainly not the type of assurances that have led other courts to deny motions to disqualify, like detailed measures to segregate confidential information, *see Gartner, Inc.*, 580 F. Supp. 3d at 39–40, or affidavits demonstrating that the conflicted attorney did not communicate about the two matters—to the extent that is even possible for an individual attorney involved in each matter, *see Intelli-Check, Inc. v. Tricom Card Techs., Inc.*, No. 03-CV-3706, 2008 WL 4682433, at *5 (E.D.N.Y. Oct. 21, 2008).

Fourth, Dollinger—in a subsequent submission—presents a retainer agreement that he claims demonstrates Cellura's waiver of the conflict "in writing." (Letter Resp. in Opp. to Mot.)[2] The attached document is nothing of the sort. The only conflict the retainer agreement

---

[2] There is some question about whether it is even possible to waive a concurrent conflict after an action has commenced. *See Anderson v. Nassau Cnty. Dep't of Corr.*, 376 F. Supp. 2d 294, 299 (E.D.N.Y. 2005) (citing *Discotrade Ltd. v. Wyeth-Ayerst Int'l, Inc.*, 200 F. Supp. 2d 355, 360 (S.D.N.Y. 2002)) (stating the taint from a concurrent conflict "can only be removed by full disclosure and consent of the client *prior* to commencing the adverse representation" (emphasis in original)).

10

mentions is a potential conflict between "other claims by the other named Plaintiffs" *in the Moyer Action.* (*See id.*, Ex. A at 1 n.1.) And it falls far short of the informed consent necessary to waive attorney conflicts of interest, which requires some showing that the clients have adequate information about "the material and reasonably foreseeable ways that the conflict could adversely affect their interests." *United States v. Huawei Techs. Co.*, No. 18-CR-457, 2020 WL 903007, at *6 (E.D.N.Y. Feb. 25, 2020) (alterations adopted) (quoting *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 311 (E.D.N.Y. 2010)); *see also Painter v. Turing Pharms., LLC*, No. 17-CV-7558, 2018 WL 10529533, at *3 (E.D.N.Y. Aug. 7, 2018) (finding concurrent conflict discharged where clients "filed written waivers attesting to their informed consent").[3] Moreover, the attempt to obtain consent after a concurrent conflict is revealed via a motion to disqualify can actually "support the appearance of impropriety," as it indicates counsel may be acting on a strategic, rather than ethical prerogative. *See Anderson*, 376 F. Supp. 2d at 300.

---

[3] For the same reason, Dollinger's claim in response to Defendants' Objection that Cellura waived any conflict by allowing Dollinger's continued participation in the Moyer Action pending this Motion falls flat. (Empire Resp. to Defs' Obj. ("Empire Obj. Resp.") (Dkt. No. 67) 8.) Dollinger asserts without citation that the "rule of law is that if not acted on at the outset when the facts supporting the motion were known . . . their conduct results in a waiver of the right to seek disqualification." (*See id*. 7.) The Court is not aware of *any* caselaw to that effect. In fact, courts have found that there may be "entirely reasonable explanation[s]" for delay in filing a motion to disqualify. *See Galloway v. Nassau County*, 569 F. Supp. 3d 143, 148 (E.D.N.Y. 2021); *see also Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201, 213 (S.D.N.Y. 2009) (holding that tactical motivations could not be inferred when an "entirely reasonable explanation" existed for the moving party's delay). And the Court is aware of at least one case holding that a *three-year* delay was "not extraordinary" enough to deny a motion to disqualify based on alleged conflicts of interest. *See Galloway*, 569 F. Supp. 3d at 148 (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir. 1973) (explaining that such delay, "if anything" may have "worked to [the movant's] disadvantage"). Moreover, there *was no* meaningful delay here, as Defendants raised the concurrent conflict and filed a pre-motion letter within days of being served. (*See* Dkt. No. 65 (affidavit of service indicating Cellura was served on March 30, 2024); Dkt. No. 20 (Defendants' April 1, 2024, pre-motion letter).)

Fifth, Dollinger asserts that Cellura cannot even claim attorney-client privilege as to certain matters in the Moyer Action because the privilege was "owned by the corporation, not by Cellura." (Empire Trust Mem. 10–11.)  Think about that for a moment.  One of Dollinger's arguments for why a prima facie conflict should be excused is that *his own client* cannot exercise the attorney-client privilege.  Far from dispelling the taint of a conflict, that position clarifies how compromised Dollinger's representation really is.  The assertion is also wrong, if not an outright misrepresentation.  Dollinger admits in a footnote, (*see* Empire Trust Mem. 3 n.3), that he represents Cellura as an individual, not just as a corporate officer, in the Moyer Action—a fact is confirmed by the docket.  (*See* Dkt. 22-CV-9339 (listing Dollinger as lead attorney for "Joseph R. Cellura *individually*").)

Finally, the Court notes that Dollinger makes no argument about why his disqualification would prejudice Empire Trust.  (*See generally* Empire Trust Mem.)  Typically, prejudice is a significant factor weighing against disqualification.  *See Gartner, Inc.*, 580 F. Supp. 3d at 41.  But in addition to the argument not being presented, the Court is not particularly concerned with prejudice under the circumstances.  Indeed, just days after Defendants submitted their Reply, every Plaintiff other than Empire Trust appeared with substitute Counsel.  (*See* Stip. and Order (Dkt. No. 44) (substituting attorneys from Woods Lonergan, PLLC, as counsel for Baynon Corp., ADMI, Inc., and Ghiselli); Order for Admission of Barak Lurie (Dkt. No. 41) (granting pro hac vice admission for new counsel for Ghiselli and Houle).)  And as relevant here, those Plaintiffs are all alleged to be Empire Trust's Beneficiaries.  (*See* Am. Compl. at 1.)  Additionally, this case is still in its early stages, and apart from the instant Motion, the only other pending motion practice deals with venue issues, which would not be difficult for new counsel to master.  (*See* Not. of Mot. (Dkt. No. 62).)

As a bookend, although the Court need not decide whether Dollinger is also subject to a conflict in relation to a settlement agreement, the Parties' arguments about that issue only reinforce the concerns discussed above. The dispute involves an agreement where Dollinger purportedly recognized his confidentiality obligations arising out of representing Cellura and his wife over "the past several years." (*See* Cellura Decl. ¶ 9; Empire Trust Mem. 12–14; Defs' Mem. 8–10.) The Court has not seen the agreement, but Dollinger claims that it is invalid because his "signature was obtained by fraud" and because Cellura "falsely claim[ed] he [was the] CEO of ADMI when in fact he was not." (Empire Trust Mem. 12.) Suffice it to say, if one is trying to demonstrate a lack of conflicting loyalties, it is best not to accuse a client of fraud.

For all those reasons, Dollinger has failed to meet his burden in opposing disqualification. *See Canfield v. SS&C Techs. Holdings, Inc.*, No. 18-CV-8913, 2020 WL 3960929, at *5 (S.D.N.Y. July 10, 2020) (explaining that "disqualification in the face of this concurrent representation is warranted" where an attorney fails to show an absence of conflicting loyalties); *Pergament v. Ladak*, No. 11-CV-2797, 2013 WL 3810188, at *8 (E.D.N.Y. July 23, 2013) (disqualifying counsel where trustee was "not sufficiently confident" in counsel's "undivided loyalty" and explaining that "no more that this is needed" in the case of a concurrent conflict).

### 2. Empire Trust's Notice of Voluntary Dismissal

Finally, there is the matter of Empire Trust's voluntary dismissal. As the Court noted above, Defendants objected to that request, in part, because they believe it is an attempt to moot the instant Motion. (*See* Defs' Obj. 3–4.) Dollinger notably does not respond to this argument and instead alludes in a heading that the "Court's Clarification of its Order on Disqualification has Been Satisfied" by the Rule 41 notice. (Empire Obj. Resp. 8.)

As a threshold matter, it is not clear that dismissal of Empire Trust's claims *could* moot the Motion. In addition to Empire Trust, Dollinger is still listed as counsel of record for Houle. (*See* Dkt.) When Defendants raised that representation in a letter, (Dkt. No. 46), Dollinger's only response was to say that it is "unclear whether I am to continue representing Mr. Houle," (*see* Letter Resp. in Opp. to Mot. 1). And there has been no indication of Dollinger's withdrawal or substitution since despite the appearance of another lawyer on Houle's behalf. In other words, the Motion would still present a live issue even if Empire Trust's claims were dismissed.

In any event, the Court grants the Motion notwithstanding the pending notice. Indeed, courts approach with great skepticism the use of procedural devices to "convert a present client into a former client" in order "to erase the appearance of a concurrent representation." *See Canfield*, 2020 WL 3960929, at *4 (alteration omitted) (quoting *Troika Media Grp.*, 2019 WL 5587009, at *5). Courts have thus "prevent[ed] an attorney from amending a complaint to erase the appearance of concurrent representation." *See id.* And they have seen fit to disqualify attorneys even where the conflicted counsel has "filed notices voluntarily dismissing [their client's] claims" as to certain defendants. *See id.* Doing so makes sense because, as Defendants note, voluntary dismissals are typically without prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B) ("Unless the notice or stipulation states otherwise, the dismissal is without prejudice."). Disqualification in that circumstance alleviates the risk that the attorney will simply reassert the same claims elsewhere, or otherwise influence the pending action.

Accordingly, because "Plaintiffs' [c]ounsel has been disqualified . . . [the Court] cannot sign off on [Empire Trust's] Rule 41(a)(1) dismissal." *See Canfield*, 2020 WL 3960929, at *4.[4]

---

[4] The Court, in its discretion, declines to order payment of fees and costs under 28 U.S.C. § 1927 at this time. (*See* Defs' Obj. 4.) That provision allows a court to order payment of "excess costs, expenses, and attorneys' fees" where an attorney "unreasonably and vexatiously"

III.  Conclusion

For the foregoing reasons, Defendants' Motion is granted.  Because Dollinger is disqualified, the Court cannot act on Empire Trust's Rule 41 notice of dismissal.  Empire Trust is free to refile that notice upon retaining new counsel.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 56.)

SO ORDERED.

Dated:   October 24, 2024
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

"multiplies the proceedings."  28 U.S.C. § 1927.  The Court previously raised Section 1927 when it denied the Motion as moot based on Dollinger's purported substitution.  (*See* Order (Dkt. No. 45).)  Courts have ordered such awards in similar circumstances where an attorney provides notice of withdrawal on the eve of opposing counsel's deadline for moving to disqualify, *see THOIP v. Walt Disney Co.*, No. 08-CV-6823, 2009 WL 125074, at *4 (S.D.N.Y. Jan. 20, 2009), where counsel "voluntarily withdrew from the case after a motion to disqualify was filed," *Madison 92nd St. Assocs., LLC v. Marriott Int'l, Inc.*, No. 13-CV-291, 2013 WL 5913382, at *12 (S.D.N.Y. Oct. 31, 2013), *aff'd sub nom. Boies, Schiller & Flexner LLP v. Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015) (summary order), or where counsel denied the existence of a conflict but "belatedly[] conceded" such a conflict after a motion to disqualify was fully briefed, *see id*.  Here, however, the Motion is very much alive, and the Court would require more factual development to make the necessary findings of bad faith to grant Section 1927 sanctions in that circumstance.  *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180 (2d Cir. 2004) (explaining that a finding of bad faith is required for sanctions under Section 1927).  Nothing about this ruling shall prevent Defendants from seeking sanctions, including fees and costs, pursuant to Federal Rule of Civil Procedure 11.  Such an application, of course, could address conduct in this case beyond inducing the instant Motion.